Thank you, Your Honor. My name is Dorothy Alter, and I'm here on behalf of the Appellant, the Bishop, Paiute Tribe. We're here today on a dismissal of the Tribe's case by the lower court. We've been here to have a case controversy, and most of the opinion on the decision centers on a response that the Tribe submitted to the Sheriff's Department on January 6th. There was a shooting-decision decision on January 6th. I think it's very important to put some of these contexts of the events that were taking place back in January. And I thought that, Your Honor, I'm too much to ask you procedural questions. The issue arises as to whether the judge's order was a final order that would be appealable. The dismissal below was involuntary, and under Rule 3 would be quitting a dismissal as involuntary for lack of jurisdiction. It's without prejudice. Would you agree with that? My last motion is for Rule 3 as it is without prejudice. Okay, so it was without prejudice. There are several rules about appealability from dismissals with prejudice. And some appeals without prejudice are appealable, and some are not. There's a lot of case law about that. But, first, the question is, do you have any specific opinion as to why, or argument as to why, this appeal, this order, without prejudice, would be appealable? And I will give you a very brief list. We do, Your Honor. And I can't really respond to that because I'm not familiar with the rule. The final appeal is a decision that disposes of the case, and this decision does dispose of the case. That's my next question. Why couldn't the tribe, instead of taking this appeal, file a motion to amend the complaint with the court? Or a motion under Rule 15-98 that just referred to a defense jurisdiction, and those are those because the dismissals were without prejudice. Correct. Was that ever thought to consider, or thought of, for any reason why you didn't do that? I don't think it was ever thought of. I think it was considered, and I think the primary reason is because of the basis on which the lower court focused. Essentially, what the lower court, what we believe, what we're saying is that the tribe received a cease and desist order from the county sheriff, saying you will cease enforcing or exercising authority as a state police officer. The tribe responded saying, okay, let's slow down here. We'll agree to status quo everything until we can meet. The lower court clearly found that the county said don't do this. The tribe said we won't. Case over. There is no longer a dispute in this case. So I don't believe there is anything left really for us to go in and argue with the fact that we had- You basically, I don't think you used the word premature, but you felt that just incarcerated was premature. Essentially, as you felt it was premature, that you wanted more time to negotiate with the sheriff than to try and reach an accommodation. That's why you did it on the street first. Correct. The tribe said that had been done by us. You found that your claims were pointed out to us. Are there facts that the district maybe didn't question we were there for 59 years? I believe that all of our pleadings, it was clearly pointed out the fact that we had in the letter, in response to the sheriff, asked for that meeting to ever happen. The sheriff wasn't engaging with us. There was no opportunity to have that meeting. And, you know, the tribe was put in a place. I don't feel like they had much other option other than to sue. But I don't, I can't really respond to the fact of why we didn't file a motion to reconsider. Other than, like I said, I don't think there was anything more that we could have presented in argument. Or at least it was supposed to be a reappeal in reverse. Correct. What are you going to do in the district court? We will probably move through some range. But I don't think there is a lot of questions as to material fact. I do think this is a question of law. So you wouldn't ask for discovery? And if the other side asked for discovery, you don't have anything to oppose it? Because there really wasn't any discovery here, was there? No, there wasn't. But, again, like I said, I don't see a lot of issue as to material fact. I mean, we will, we obviously dispute the interpretation of the events that occurred. But the reality is, our officer was arrested, and he's being prosecuted. So they're seeking forward-looking declaratory and objective relief. So I think you agree that you have to demonstrate a certainly impending harm. Can you talk to me about why you think that you have a certain impending harm that gives rise to an injury and then back down? It shows to us that this case is ripe. Yeah. Well, what we are concerned about is, and I think where the harm is from the threat that we've gotten from the county, is that the county believes that tribes do not have inherent authority as law enforcement officers. I think this court in the Supreme Court has established that we have the right to stop, restrain, detain, and to investigate and to turn an individual over to the proper authorities. Okay? That is established in the law. The county, unfortunately, does not have the view. They don't accept that. They see that when an officer stops somebody and restrains them as a false person and detains them, and that they have no authority to do any of those actions, they must be impersonated as an officer. So unless we can get this clarified, what our authority is and what we're allowed to do, we are going to continue to have a threat of prosecution until we can get the legal issue established. And one of your tribe officers, apparently, was being prosecuted. What's his status? He is continuing to be prosecuted, I believe, in the case of century trials sometime in late summer. One of the arguments that the county makes on it, I don't think that the judge, the district court judge, rules it wrong with respect to HILERA, the law. But it looks like the county is making some arguments on appeal in their brief that the HILERA displaces the federal common law regarding the tribes' alleged federal common law rights that detain and deliver to the proper authorities an Indian suspected of violating tribal or state law on tribal property. Okay, what's your response to that? The statute that he's referring to really doesn't address tribal and area authority. Okay? And I think we need to kind of keep those two separate. What the Law Enforcement Reform Act is defined for is PIA law enforcement is responsible for law enforcement on Indian lands, period. That's what that act is designed for. It is to guide PIA law enforcement and tribal law enforcement that are operating under a contract with PIA, which none of our officers in California are allowed to do, or they hold an SMUC. So that act has nothing to do with the tribal law enforcement, such as the ones we've been shown trying, who do not have federal funding for our law enforcement, nor do they operate with a special law enforcement commission. So that act is really inapplicable to this case, and it displaces nothing. Like I said, our officers operate purely under inherent tribal authority, and that specific law that's established by the tribe. Thank you, Councilwoman Gayle. We'll give you a few minutes for rebuttal. Thank you. We are adjourned. Good morning, Chief Judge Thomas, and Judge Ruiz, and Judge Belson. It's a privilege to represent Indian County, California, along with the Indian County Sheriff, William Munce, and District Attorney Thomas Hardy. In this case, there are six defendants, and they've reached court. In this case, the tribe is asking for a federal court order, a federal court reinforcement order that states that Indian tribes have the inherent right to stop, detain, physically restrain, and investigate non-Indians for suspected or possible violations of the title, state, and federal approval in civil law. They claim this has an inherent right to being an Indian tribe. Again, I'd like you to want that issue resolved. That issue could be resolved by Congress. There is such a law as a result of a federal court, because right now, I mean, let me play this out for you, because this is not the first Indian tribal jurisdiction case we've had. Let's assume that the tribe decides to ignore your cease and desist order. How are you going to bring them into court to enforce that you have sovereign immunity? See, so what we find in these cases is that when there's a conflict between sovereigns in the state and the tribe, it often ends up in a stalemate in the courts, because you lack the authority to bring the tribe into court. Here you have a forum, because the tribe has stood the county. So it's obvious there's some conflict on the ground here. Why don't you want the answer? The order that the tribe is seeking is a very broad, general, abstract order. It includes all law enforcement activities within all of the states in the 9th Circuit and federal law enforcement. There are an infinite number of possible circumstances that would be including you before this court. If this court were to say... Maybe we've been down that road before. Maybe it's in your decision to protect the strong citizens that we've looked around here. All I'm saying is, going forward, often for this practical matter, don't you want to have some line of authority deciding whether you may win, you may partially win, you may lose, but don't you want an answer? It could be answered on a specific case-by-case basis. For instance, if the tribe were to say, in response to Sheriff Lutz this quarter, we are going to carry our firearms off the reservation into the town of Ditching, and we're going to carry them loaded and display them in violation of California's law, at least that is what we're asking of you, because we think that we have the inherent right to do that. Then would you litigate that issue? We don't know what this court is litigating. How are you going to do that, with respect? They have sovereign immunity. If they wanted to litigate that issue, they could file a reproving action for declaratory plea, and in compliance with Judge Royal's order, they can specifically identify what the planned course of action is in accordance with the Alaska Rail Flight case, and then they can litigate it. With any other declaratory judgment? With regard to the planned course of Sheriff Lutz's order, if they choose to just resist, you don't have a recourse against the tribe. They're leading to a recourse against the tribe, Your Honor, but certainly he's accused the individual officers. I understand that. So if the tribe wants to resolve that, they can bring the action. If they don't want to resolve it, then if their officer is going to town and they're going to get teams of firearms with them and walk around carrying their guns, then they're subject to the rest of the violating California law, and the courts decide that issue. You want me, Mike, to take your answers today or do you intend to... The county intends to keep enforcing its policy, does it? Well, when you see its policy... Right. If you're referring to the policy, if they want to go ahead and carry the firearms, of course, it's California law. You have that policy, and also your position is that they don't have authority to arrest anybody on any non-member group. No, Your Honor. Well, arrest, yes. They don't have authority to arrest. What they do have authority to do is specifically described in the cases that the tribe itself cites. The Ortiz-Urrazi case, the Sarah Garcia case, the Washington State Supreme Court case, all of those cases cited by the tribe, each in their complaint as well as in their brief, making clear that the tribes did have the right to enforce tribal law in all of these cases with regard to trespass or violating some type of a tribal law. They have the right to enforce those laws against tribal members as they did then if they happen to stop a non-tribal member, and if they then see coincidental criminal conduct occurring, such as the possession of marijuana in the Ortiz-Urrazi or mobilizing aliens in the Sarah Garcia case, then they can detain, not arrest, detain those persons and call the properly credentialed law enforcement authorities. And that's what that gets received. Do I ask a continued question, I guess, to your colleague about appealability? Do you concede that this was the final order, this appealable order, or you just didn't consider it or something else? I mean, it's an appealable order with respect to the framing of this particular complaint, whether this complaint could have been amended to bring a proper case of controversy and set forth a concrete plan for violating the sheriff's order. That's certainly possible. But with respect to the order that this tribe is asking for, it simply wasn't the final order. Well, if we came back to what the U.S. Chief Justice asked you, if this were to go back, for whatever reason, to the district court, would you want discovery on these issues? Do you think you would want to make a record to address some of the issues that Chief Justice just raised with you, or rather than just make complaints? He's having a difficult decision. It's a question of how right this is, which is a judicial theory, and that's what we have to decide, certainly. But it seems to me that there is at least some argument here that what the district judge did was arguably premature, and that if both sides were able to make a record in the district court of what the tribe really wants, the details, and there were some depositions about it and things like that, there could be a much more better articulated resolution of the merits that we've just responded about. Without a new complaint, can you tell us whether it's an amendment to this complaint or an unamended complaint, a further amended complaint, or a new cause of action or a new complaint? Certainly the tribe can fashion a concrete course of action and then discuss it in the beginning. But do you agree that discovery... Do you agree that the submissive was without prejudice under Rule 41b? How does this apply to jurisdiction? Yes, sir. I'll concede to that. Thank you. I recognize you, so I asked about the tribal officer who's being prosecuted. Do you know, as he's going to continue to be prosecuted, is your client going to continue? I think that was the question. I'm sorry, go ahead. As he continues to be prosecuted? Yes, the trial is set for July 11th. And so, as far as you know, that's going to proceed And as far as you know, if the tribe continues to detain or to deliver, I guess that's what I want to find out, detain or restrain or deliver these individuals, non-tribal members, what's your position going to be? If those... First of all, with respect to the tribal officer, if I may, first of all, there seems to be a misunderstanding throughout what he's being prosecuted for. The tribal officer is being prosecuted for excessive force and felony stomping, attacking, and battering on a 120-pound woman. That, though it's in the process of action, or those are my complaints, would have been brought against any police officer, whether it's a health one, a federal one, some patrol or whatever, he's not being prosecuted for being a tribal officer, detaining someone. That's not what he's being prosecuted for. He can't do that. No. The man that complained, it was made a part of the insurance record, omits Exhibits 16 and 17, which is the description of the reports on murder and death of a woman in documenting the excessive force that was used, excessive force, and injuring this woman. So that's what he's being prosecuted for. We've gone for the DEV. We're going to go in here. Yes, sir. I'm sorry, I've got a second question. Sorry. Thank you. Okay. Any further questions? No. Thank you, counsel. If I may, Your Honor, I just want to give you just another story on your case. Your Honor, just a couple points of clarification. First of all, the tribe's officer was charged with false imprisonment, and so that was a direct response of the district attorney to the detention of the officer that charges him to be dismissed, but he was charged with the false imprisonment for the detention. I just, I guess one of the points that I think needs to be really stressed here is that... Excuse me. ...is in 1919, the Supreme Court of the United States in the Duro case specifically said, Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, eject them. Where the jurisdiction to try and punish the offender rests outside of the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities. Okay. And it has been in effect since 1990. This court went on over the years to scrutinize and define what that really means. So the Ninth Circuit has held repeatedly that tribal law enforcement tribes have inherent authority to obstruct tribal law enforcement departments and employee officers. They have held that So let me kind of just ask you something. So here, you're seeking, I want to make sure I understand, a declaration regarding the tribe's inherent authority that it can criminally charge or authority to detain and deliver an unindented violator to the proper authorities or that it can criminally charge and prosecute non-indented violators. Oh no, no. All this law just made it clear that we cannot try and punish the dead. And so the order that we're seeking is that if we are stopping somebody and we are detaining them to determine who are they, non-indented, then second of all, to investigate the limited, to see if there's been a violation or ask, as my colleague pointed out, something, you know, you see three pounds of marijuana in the vaccine, that you then just hold them until you call the sheriff and things, but they continue to hostages, especially if it's the non-indented. That's all we're trying to establish here. And that what we're doing, those are activities that it's a matter of a federal established law that we can do that and we shouldn't have to suffer a criminal prosecution for impersonating the same officers that are involved to arrest and, you know, and one of the charges is to battery. And I don't want to get into the criminal case for marijuana. It's not relevant. But how occurs if you're restraining somebody without touching them? I, you know,  But that could potentially the battery. So all I really want is these, like I said, clarification from a federal court that look, officers have this authority. You're right. And that they should not operate under the threat of criminal prosecution. Now, I'm not asking that the court or that the officers be allowed to act with impunity. We are still bound by the Indian Civil Rights Act. Our officers are still held to reasonable circumstances. By nature, you know, all of the constitutional protections of individuals are officers. The stone has to be greased with oil for it has to be a criminal cause. So it's not this sort of creative horse that, oh my God, if law enforcement gets this authority, you know, this is going to be terrible. This authority has been exercised by law enforcement since around 1990. And so, I really believe that it's a fairly straightforward case. Like I said, what the tribe is asking for in terms of the declaratory relief. Thank you, Counselor. The case is argued based on a fair decision. Thank you both for your arguments.
judges: Thomas, Murguia, Baylson